# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

KIMBERLI LYNN SNODGRASS,     §
                                 §

       **Plaintiff,**        §
                                   §

V.                                  §        **NO. 11-CV-0219-P**
                                   §

CAROLYN W. COLVIN,        §
**Acting Commissioner of Social Security,**[1]    §
                                   §

       **Defendant.**        §

## ORDER REJECTING FINDINGS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

On October 21, 2011, the assigned Magistrate Judge recommended that the Court deny Plaintiff's motion (doc. 9),[2] grant Defendant's Motion for Summary Judgment (doc. 11), and affirm the Commissioner's decision to deny Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") to Plaintiff Kimberli Snodgrass. (*See* Findings, Conclusions, and Recommendation

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), she is automatically substituted as the defendant in this action.

[2] As initially recognized by the Magistrate Judge, Document 9 is Plaintiff's Brief. Plaintiff did not file a motion even though the local rules of this Court require that "all parties to actions filed under 42 U.S.C. § 405(g) must file motions for summary judgment." N.D. Tex. R. R. 9.1. The filing also ignores the Scheduling Order (doc. 7) entered in this case, which notes N.D. Tex. R. 9.1 and sets deadlines for the filing of cross-motions for summary judgment. While "summary judgment can be a problematic procedure for reviewing an appeal of disability claims under the Social Security Act," *Lovett v. Schweiker*, 667 F.2d 1, 2 (5th Cir. Dec. 1981) (per curiam), and that procedure is explicitly prohibited in at least one jurisdiction, *see Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994) (relying in part on *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1504 (10th Cir. 1992) (Kane, J., concurring)), the Fifth Circuit has held that nothing prohibits use of summary judgment procedures in social security appeals even though "Rule 56 does not fully fit the district court's role in the review of the [social security] decision," *Flores v. Heckler*, 755 F.2d 401, 403 (5th Cir. 1985). Whether issues are presented through a motion for summary judgment or some other means, the district courts apply the well-established procedure for reviewing social security appeals by looking to the administrative record. *See Girling Health Care, Inc. v. Shalala*, 85 F.3d 211, 214 (5th Cir. 1996) (addressing standard in context of summary judgment); *Flores*, 755 F.2d at 403-04 (recognizing that moving for summary judgment is not required and holding that "district courts reviewing disability determinations should not conclude their review without an appropriate opportunity for the presentation of the parties' contentions); *Lovett*, 667 F.2d at 2 (recognizing that summary judgment is not precluded and addressing whether substantial evidence supported the decision). Despite the failure to comply with N.D. Tex. R. 9.1 and the Scheduling Order, the Court will consider the issues raised in Plaintiff's brief. But it will not consider the filing as a motion for summary judgment.

("FCR"), doc. 13.)  Plaintiff timely objected to the recommendation.  (*See* Pl.'s Obj'ns to Mag. J.'s Report & Recommendation [hereinafter Obj'ns], doc. 14.)  She urges the Court to reverse the decision of the Commission and remand her case for an award of benefits.  (*Id.* at 9; *accord* Pl.'s Br. (doc. 9) at 22.)  The Commissioner has filed no response to the objections.  For the reasons that follow, the Court rejects the FCR after reviewing all relevant matters of record, including the FCR and the filed objections, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(3).

## I.       Authority of Magistrate Judge and Standard of Review

Section 636(b)(1)(B) of Title 28 of the United States Code grants magistrate judges authority to issue findings and recommendations regarding dispositive motions in cases referred to them.  The statute provides for the filing of written objections to proposed findings and recommendations and for a de novo determination of matters "to which objection is made."  Objections asserted in accordance with this provision serve "to narrow the dispute" and enable district judges "to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute."  *Thomas v. Arn*, 474 U.S. 140, 147 & n.6 (1985).

Rule 72(b)(3) of the Federal Rules of Civil Procedure likewise provides for a de novo determination of "any part of the magistrate judge's disposition that has been properly objected to."  Rule 72(b)(2) requires the objecting party to file "specific written objections" and grants other parties fourteen days to respond to such objections.

Consistent with § 636(b)(1) and Rule 72(b)(3), the Court reviews the findings and recommendation of the Magistrate Judge in this case.  It "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3); *accord* 28 U.S.C. § 636(b)(1).

2

## II.    Objections

Plaintiff objects to each finding of the Magistrate Judge.  (Obj'ns at 1.)  More specifically, she objects to finding that the Administrative Law Judge ("ALJ") properly (1) found her substance use material to her disability; (2) evaluated medical source opinions from her treating psychologist, Shirley J. Jordan, Ph.D.; (3) evaluated her credibility; and (4) relied upon Vocational Expert ("VE") testimony.  (*Id.* at 1-9.)  She further objects that (5) the Magistrate Judge improperly found that a March 31, 2009 letter report from Art Smith, M.D., did not require a remand for further consideration.[3]  (*Id.* at 7.)

### A.    Substance Abuse

The ALJ found that Plaintiff would not be disabled if she quit using drugs and alcohol  (*See* Tr. at 19-24.)  Accordingly, he found her substance use disorders were "a contributing factor material to the determination of disability."  (Tr. at 24.)  The Magistrate Judge found no error in the materiality finding.  (FCR at 18-20.)  Plaintiff objects and contends that the ALJ erred.  (Obj'ns at 1-4.)

"In 1996 Congress passed the Contract With America Advancement Act ("CAAA") which amended the Social Security laws such that alcohol or drug addiction might preclude a finding of disability."  *Dominguez v. Astrue*, No. A-06-CA-913-SS, 2007 WL 6344512, at *7 (W.D. Tex. Oct. 9, 2007); *accord Brock v. Astrue*, No. 3:10-CV-1399-BD, 2011 WL 4348305, at *5 (N.D. Tex. Sept. 16, 2011).  The Commissioner shall not consider an individual disabled "if alcoholism or drug addiction" is "a contributing factor material" to the disability determination.  42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J).   The Commissioner evaluates addiction issues through a three-step sequential

---

[3]Although Plaintiff combines this objection with her second listed objection, the two objections are sufficiently distinct to separate them.

3

process.  If the Commissioner (1) finds an individual disabled and (2) has medical evidence that the individual has a drug addiction or alcoholism ("DAA"), the Commissioner (3) "must determine whether [the DAA] is a contributing factor material to the determination of disability."  20 C.F.R. §§ 404.1535(a), 416.935(a).[4]

The "key factor" at the third step of this process is whether the Commissioner would still find the claimant disabled if the claimant "stopped using drugs or alcohol."  *Id.* §§ 404.1535(b)(1), 416.935(b)(1).  This determination requires the Commissioner to first evaluate which physical and mental limitations would remain if the claimant discontinued his or her drug and alcohol use and then determine whether any "remaining limitations would be disabling."  *Id.* §§ 404.1535(b)(2), 416.935(b)(2).  Whether a DAA "is a contributing factor material to the determination of disability" depends on whether limitations remaining after stopping drug and alcohol use are sufficient of themselves to find the claimant disabled.  *See id.* §§ 404.1535(b)(2)(i)-(ii), 416.935(b)(2)(i)-(ii).  The DAA is a contributing material factor only if the remaining limitations are not disabling.  *Id.* §§ 404.1535(b)(2)(i), 416.935(b)(2)(i).  Otherwise the DAA is not a contributing material factor.  *Id.* §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii).

The claimant "bears the burden of proving that drug or alcohol addiction is not a contributing factor material to her disability."  *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999).  Whether evidence is sufficient to support a materiality finding strongly depends on the facts of the case.  *Id.* at 499.  Similarly, the evidence required to carry the claimant's burden necessarily depends on those same facts.  In any event, claimants who are addicted to drugs or alcohol "must introduce evidence

---

[4]Section 416.935(a) eliminates this requirement, if the Commissioner finds the individual eligible for SSI benefits on the basis of the claimant's age or blindness.  Neither age nor blindness impacts the Commissioner's decision in this case.

that supports a finding" that they would still be disabled even upon stopping their drug and alcohol use. *Id.*

After the claimant has introduced such evidence, the ALJ "must identify at least *some* medical evidence supporting the conclusion that [the] claimant no longer would be disabled if he or she stopped drinking or taking drugs." *Sklenar v. Barnhart*, 195 F. Supp. 2d 696, 700 (W.D. Pa. 2002) (cited with approval in *Dyer v. Astrue*, No. 3:08-CV-1407-BD, 2010 WL 304242, at *3 (N.D. Tex. Jan. 26, 2010)). ALJs are not free to substitute their lay opinions for psychiatric or medical opinions of record. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003); *Eastham v. Comm'r of Soc. Sec. Admin.*, No. 3:10-CV-2001-L, 2012 WL 691893, at *10 (N.D. Tex. Feb. 17, 2012), *report and recommendation accepted*, 2012 WL 696756 (N.D. Tex. Mar. 5, 2012). In addition, they may not infer "that cessation of narcotic and alcohol usage would abate" severe mental impairments of the claimant when the record provides no guidance as to the claimant's prognosis with respect to those impairments upon stopping use of drugs and alcohol. *Brown,* 192 F.3d at 499. Substantial evidence must support an ALJ's "determination regarding the effect of the claimant's substance abuse." *Cravin v. Astrue*, No. 5:07-CV-222-C, 2008 WL 2923867, at *3 (N.D. Tex. July 30, 2008) (adopting recommendation of Mag. J. citing *Brown*, 192 F.3d at 499). "Any lay conclusion the judge may have drawn from the medical records is insufficient to support his materiality determination." *Dyer*, 2010 WL 304242, at *3-4.

In this case, the ALJ found Plaintiff disabled at Step 3 of his sequential disability evaluation.[5] (*See* Tr. at 18.) Given the presence of medical evidence that Plaintiff suffered from a DAA, the ALJ

---

[5] A five-step evaluative sequence is used to determine whether an adult claimant is disabled. *See Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). This five-step process is followed in the first step of the three-step process used to evaluate addiction issues.

considered whether the addiction materially contributed to the disability determination. (Tr. at 18-24.)  And he concluded that Plaintiff's substance use disorders were a contributing factor material to the disability determination because Plaintiff would not be disabled absent her substance use. (Tr. at 24.)

The Magistrate Judge found the materiality conclusion correct and supported by substantial evidence because the evidence showed that (1) Plaintiff continued to use drugs during the relevant time period and (2) she improved when she stopped using them.  (FCR at 19-20.)  But neither of these reasons directly address the pertinent question, i.e., whether Plaintiff would remain disabled absent her drug and alcohol use.  Using drugs or alcohol is not material to a disability determination merely because the claimant has continued to use such substances. *See Dyer*, 2010 WL 304242, at *3-4.  And even if the claimant shows improvement during periods of abstinence from drugs and alcohol, mere improvement does not necessarily mean that Plaintiff's severe impairments became non-disabling.  The relevant question under 20 C.F.R. §§ 404.1535(b)(2) and 416.935(b)(2) is whether, in the absence of drug and alcohol use, the claimant improves to such a degree that she is no longer disabled.

Regardless of alcohol or drug use, it is undisputed that Plaintiff has severe mental impairments – bipolar and anxiety/panic disorders – that would continue to affect her ability to "perform[] a full range of mental work." (Tr. at 18-19.)  Combined with her polysubstance abuse, these mental disorders were disabling at Step 3 of the five-step process.  (Tr. at 13-18.)  But the ALJ determined that Plaintiff would not be disabled if she quit using alcohol and drugs.  (Tr. at 19-24.)  Given the fact-intensive nature of that determination, the Court proceeds to consider whether the ALJ properly evaluated and weighed opinions of Plaintiff's treating psychologist, Dr. Jordan, before further

6

addressing whether the ALJ erred in finding Plaintiff's substance abuse material to her disability.

### B.   Evaluating Opinions of Treating Psychologist

Plaintiff objects that the Magistrate Judge improperly found that the ALJ was entitled to reject September 2009 opinions of her treating psychologist, Dr. Jordan. (Obj'ns at 4.) She contends that the ALJ failed to properly consider such opinions. (*Id.* at 4-7.)

On September 15, 2009, Dr. Jordan opined that Plaintiff "is totally disabled without consideration of any past or present drug and/or alcohol use." (Tr. at 365.) She further stated that "[d]rug and/or alcohol use is not a material cause of this individual's disability." (*Id.*) On September 25, 2009, she completed a Psychiatric/Psychological Impairment Questionnaire ("PPIQ") to set out her (1) diagnosis (Bipolar I Disorder, Mixed Episode, Severe with Psychotic Features and an unspecified personality disorder); (2) multiaxial evaluation, including a notation of a "history of drug problems" and a current GAF of 30 with lowest GAF in the past year being 20;[6] and (3) prognosis (poor). (Tr. at 366.) Within the PPIQ, she also identified numerous clinical findings, including substance dependence, and laboratory and diagnostic test results from Minnesota Multiphasic Personality Inventory-2 ("MMPI-2") to support her diagnosis. (Tr. at 367.) She listed Plaintiff's numerous primary symptoms and identified the more frequent or severe ones as "mood swings, panic anxiety, diminished ability to think and concentrate, [and] poor judgment." (Tr. at 368.) She also recorded

---

[6]"GAF" is an acronym for "Global Assessment of Functioning," which is a standard measurement of an individual's overall functioning level with respect to psychological, social, and occupational functioning." *Seibert v. Astrue*, No. 4:09-CV-0090-A, 2010 WL 6389303, at *2 & n.4 (N.D. Tex. June 14, 2010), *report and recommendation adopted*, 2011 WL 1211350 (N.D. Tex. Mar. 31, 2011). GAF scores from 21 to 30 indicate: (1) "[b]ehavior is considerably influenced by delusions or hallucinations;" (2) "serious impairment in communication or judgment;" or (3) "inability to function in almost all areas." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (Text Revision 4th ed. 2000) [hereinafter DSM-IV-TR]. A GAF score of 20 indicates: (1) "[s]ome danger of hurting self or others;" (2) "occasionally fails to maintain minimal personal hygiene;" or (3) "gross impairment in communication." *Id.*

her conclusions and assessed Plaintiff's capacity to sustain various mental activities "over a normal workday and workweek, on an ongoing basis in a competitive work environment."[7]  (Tr. at 368-71.) She stated that Plaintiff's "anxiety reaches panic stages when in work situations" and "work is not possible at this point."  (Tr. at 371.)  She found that Plaintiff's bipolar disorder exacerbated her physical symptoms in that Plaintiff "has self medicated in [the] past to handle symptoms which has resulted in drug related physical problems."  (Tr. at 372.)  The doctor viewed Plaintiff as unable to tolerate even "low stress" at work and found her impairments as likely to produce good and bad days. (*Id.*)  Dr. Jordan estimated that Plaintiff would miss more than three days of work each month due to her mental impairments or treatment.  (Tr. at 373.)  And Plaintiff was unable to manage benefits in her best interest – her mother was responsible for Plaintiff's "major decisions and day to day functioning."  (*Id.*)  These opinions of Dr. Jordan are collectively found in the administrative record as Exhibit 13F.  (*See* Tr. at 365-73.)

In a narrative report dated February 28, 2010, Dr. Jordan recognized that Plaintiff "was initially seen on August 28, 2009," and was administered psychological testing, i.e., an MMPI-2, which showed eight of ten scales elevated and indicated that Plaintiff was "experiencing serious psychological problems."  (*See* Tr. at 442-43.)  Plaintiff told the doctor "that she had been drug free for the past 6 months."  (Tr. at 442.)  The report otherwise set out relevant medical and family

---

[7]Dr. Jordan found Plaintiff's abilities markedly limited in eleven of twenty listed mental activities: (3) understanding and remembering detailed instructions; (5) carrying out detailed instructions; (6) maintaining attention and concentration for extended periods; (7) performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerance; (8) sustaining ordinary routine without supervision; (9) working in coordination with or proximity to others without being distracted by them; (11) completing a normal workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; (12) interacting appropriately with the general public; (17) responding appropriately to changes in the work setting; (19) traveling to unfamiliar places or using public transportation; and (20) setting realistic goals or making plans independently.  (Tr. at 369-71.)  She found Plaintiff mildly or moderately limited in other listed abilities.  (*See id.*)

history and interpreted the results from the MMPI-2. (*See id.* at 442-43.) Dr. Jordan diagnosed a bipolar disorder, a schizoid personality disorder, and indicated a GAF of 40.[8] (Tr. at 443.) The narrative report and the results of this testing are found as Exhibit 16F of the administrative record. (*See* Tr. at 442-44.)

In his decision, the ALJ specifically considered Dr. Jordan's opinions set out in Exhibits 13F and 16F. (*See* Tr. at 16-17, 22-23.) But he accorded no weight to opinions stated in Exhibit 13F as to Plaintiff's "ability to function absent use of drugs and alcohol" because the exhibit "is skewed in that it is based on the claimant's functioning while abusing drugs and alcohol as well as her failure to comply with prescribed treatment." (*See* Tr. at 23.) The ALJ also rejected the statement in Exhibit 13F that Plaintiff's drug and alcohol use was immaterial to her disability.[9] (*See* Tr. at 22.) The ALJ does not otherwise refer to either exhibit except within the summary of the medical evidence and he records no disagreement with any other aspect of the opinions. (*See* Tr. at 16-17.)

Although the ALJ stated generally that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p," (Tr. at 20), his decision reflects no specific discussion of these requirements or any weighing or consideration other than that stated in the above paragraph. Under the applicable regulations, the ALJ must consider and weigh the medical opinions[10] of Dr. Jordan. *See* 20 C.F.R. §§ 404.1527(b), 416.927(b)

---

[8]A GAF score of 31 to 40 indicates: (1) "[s]ome impairment in reality testing or communication" or (2) "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." DSM-IV-TR at 34.

[9]According to the ALJ, Exhibit 13F states that Plaintiff's "drug and alcohol abuse were not relevant." (Tr. at 22.) But the referenced page of that exhibit discusses the materiality of drug and alcohol use, not the relevancy of abuse of such substances. (Tr. at 365.) To avoid potential confusion, the Court will generally speak in terms of use and materiality, not abuse and relevancy, when discussing the statement in Exhibit 13F.

[10]As the regulations explain to claimants: "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental

(both stating that "we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive"); 20 C.F.R. §§ 404.1527(c), 416.927(c) (both stating "[r]egardless of its source, we will evaluate every medical opinion we receive"). These regulations provide a six-factor detailed analysis to follow unless the ALJ gives "a treating source's opinion controlling weight." 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). "[A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in [the regulations]." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

The Magistrate Judge stated three reasons for finding that the ALJ properly rejected the opinions of Dr. Jordan: (1) inconsistency in the date Dr. Jordan commenced treating Plaintiff based on comparing the PPIQ with a narrative report prepared by Dr. Jordan on February 28, 2010; (2) a lack of other treatment records of Dr. Jordan to corroborate the 2009 opinions; and (3) inconsistency between the opinions and the record as a whole. (FCR at 23-26.) As part of its de novo review, the Court considers each of these reasons.

The first stated reason provides no basis to reject Dr. Jordan's opinions. The ALJ's decision must stand or fall based on the reasoning set out by the ALJ, as adopted by the Appeals Council. *See Newton,* 209 F.3d at 455. The ALJ did not reject the opinions of Dr. Jordan due to any perceived inconsistency regarding the date the doctor began treating Plaintiff. (*See* Tr. at 16-17, 22-23 (discussing Exhibit 13F, Tr. at 365-73, and Exhibit 16F, Tr. at 442-44).) Indeed, the ALJ accepted

---

restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). The regulations reserve some issues to the Commissioner "because they are administrative findings that are dispositive of a case" – opinions on such issues do not constitute medical opinions under the regulations. 20 C.F.R. §§ 404.1527(d), 416.927(d).

that Dr. Jordan "first treated the claimant in 1989." (*See* Tr. at 16.) Although the ALJ also stated

that when "Dr. Jordan first saw [Plaintiff] in August 2008, she had been drinking, out of treatment

for one year, and not taking any medications," (Tr. at 23), the ALJ appears to have confused Dr.

Jordan with a doctor who saw Plaintiff in August 2008.[11] In any event, there is no inconsistency

between the narrative report and the opinions stated in Exhibit 13F. The statement in the narrative

report that Dr. Jordan initially saw Plaintiff on August 28, 2009, appears to merely denote the date

of the initial visit of the most recent series of visits by Plaintiff in her lengthy history of visiting Dr.

Jordan "off and on."[12] This interpretation is entirely consistent with originally commencing treat-

ment in 1989 and avoids the inconsistency perceived by the Magistrate Judge.[13]

In rejecting the opinions set out in Exhibit 13F, the ALJ also did not directly rely on the

second reason stated by the Magistrate Judge – an absence of additional treatment records from Dr.

Jordan. In fact, the ALJ specifically noted that Dr. Jordan had administered an MMPI-2 in August

---

[11]The administrative record contains records from Dr. Jordan dated in September 2009 (Tr. at 365-73); her narrative report dated February 28, 2010, (Tr. at 442-43), which indicates that she saw Plaintiff on August 28, 2009; and results from the MMPI-2 dated August 28, 2009, (Tr. at 444). These records do not support finding that when Dr. Jordan saw Plaintiff in August 2009, she had been drinking, out of treatment for a year, and not taking any medications. The record also contains several medical records from August 2008, including some from JSA Health; Art Smith, M.D.; Helen Farabee Regional MHMR; and Wise Regional Health Systems. (*See* Tr. at 212-21, 246-53, 316-23, 413-18, 474-82, 495-96.) Considering his recitation of the medical evidence, (Tr. at 13-14), and given that the ALJ twice noted that, in August 2008, Plaintiff was drinking and off her medication, (*see* Tr. at 22-23), it appears that the ALJ most likely confused Dr. Jordan with Dr. Smith who had treated Plaintiff in July 2007 and then resumed treatment in August 2008 after a one-year lapse, (*see* Tr. at 13).

[12]Plaintiff testified that Dr. Jordan had treated her "off and on for a long time, probably since the time I was 20." (Tr. at 46.) Given Plaintiff's age when she testified (fifty), (*see* Tr. at 35), she essentially estimated a thirty-year period of off-and-on treatment with Dr. Jordan. Surprisingly, current counsel for Plaintiff appears to accept that "Dr. Jordon [sic] began treating [Plaintiff] on August 28, 2009," without considering her testimony. (*See* Pl. Br. at 5.) In closing argument at the hearing before the ALJ, a different attorney for Plaintiff identified Dr. Jordan as a psychiatrist who has "been treating the Claimant for over twenty years." (Tr. at 51.) Her prior attorney also recognized that Dr. Jordan began treating Plaintiff in 1989. (Tr. at 107.)

[13]Current counsel for Plaintiff suggests that the reference to 1989 could merely reflect an approximate date when Plaintiff first received treatment, not necessarily the date Dr. Jordan first provided treatment. (*See* Obj'ns at 4.) Although the suggestion appears inconsistent with the record, this interpretation also avoids the perceived inconsistency.

2009 and such testing indicated that Plaintiff had "serious psychological problems." (Tr. at 17.) The testing results are in the record. (*See* Tr. at 444.) Rather than relying on an absence of additional treatment records, the ALJ viewed Exhibit 13F as "skewed" because the opinions stated therein were based on Plaintiff's functioning while abusing drugs and alcohol and being non-compliant with prescribed treatment. (*See* Tr. at 23.) In addition, he rejected the statement in Exhibit 13F that Plaintiff's drug and alcohol use was immaterial because he found it inconsistent with her DUI[14] in 2009 and her March 2010 hospitalization for alcohol abuse. (*See* Tr. at 22.)

The "skewed" rationale for rejecting the opinions of Dr. Jordan does not hold up under close scrutiny. First, Dr. Jordan does not diagnose any current substance abuse disorder. Nor do her records indicate or suggest that her opinions were based on Plaintiff's functioning while using or abusing addictive substances or while being non-compliant with treatment. Although she notes "substance dependence" as one of twenty-two clinical findings to support her diagnosis, such notation provides an insufficient basis to infer that Plaintiff was then using or abusing drugs or alcohol. The lack of a substance abuse diagnosis actually supports the opposite. Furthermore, immediately following the ALJ's rejection of Dr. Jordan's opinions, the ALJ erroneously stated that Dr. Jordan treated Plaintiff in August 2008. (*See* Tr. at 23.) As discussed in footnote 11, there is no recorded treatment by Dr. Jordan that month and the statement appears to describe circumstances related to treatment by Dr. Smith – a different doctor who opined that Plaintiff was disabled due to her mental impairments. The erroneous statement further calls into question the rejection of the opinions as skewed. Moreover, given Dr. Jordan's unambiguous view that drug and alcohol use

---

[14] The record uses "DWI" (driving while intoxicated) interchangeably with "DUI" (driving under the influence). (*Compare* Tr. at 22 (ALJ decision) *with* Tr. at 41 (response by Plaintiff).) The Court has no reason to differentiate between the two.

were "not a material cause" of her disability and that Plaintiff is disabled without considering any drug or alcohol use, it is reasonable to construe Dr. Jordan's opinions as stating Plaintiff's functional limitations in the absence of drug and alcohol use. One can infer from the totality of Dr. Jordan's opinions that Plaintiff's drug and alcohol use did not affect her psychological opinions. Accordingly, Dr. Jordan's opinions are not skewed as asserted by the ALJ. The Court thus finds that the ALJ improperly rejected the psychological opinions stated in Exhibit 13F as skewed.

Relatedly, the Court also finds that the ALJ proffered unpersuasive reasons for finding Plaintiff's drug and alcohol use material. Although there is some support for finding that Plaintiff had a DUI in 2009, the actual date of the DUI is unclear. (*See* Tr. at 41-42.) Regardless, such an offense is not inconsistent with Dr. Jordan's materiality statement. The doctor simply states that Plaintiff was disabled regardless of drug or alcohol use. Whether Plaintiff had a DUI in 2009 does not detract from that statement. Nor does it mean that Dr. Jordan's opinions were based on Plaintiff's functioning while using drugs or alcohol. Drug and alcohol use can be immaterial to a disability determination even if the claimant has a DUI in the relevant time period.

The Court, furthermore, has reviewed the records for the March 2010 hospitalization and finds no basis for attributing it to alcohol abuse. The ALJ's summary of the records indicates:

> The claimant was treated as an in-patient at Trinity Springs Pavilion from February 26, 2010 through March 5, 2010 (Exhibit 17F). Diagnosis was psychosis following suicide attempt. Her GAF was assessed at 40. It was suspected that she had been non-compliant with her medications. (Exhibit 17F, pages 6 and 11).

> [Plaintiff] reported that she had attempted suicide to get back at her mother. She denied using drugs or alcohol. She stated her psychiatrist had told her "how to do it." She wanted to go back in time. Her GAF on March 2, 2010, was 35. (Exhibit 17F, pages 20 and 21).

(Tr. at 17.) The ALJ also states that Plaintiff "was psychologically hospitalized in February/March

2010." (Tr. at 18.)  The record supports that statement and summary of the ALJ, not his conclusion that Plaintiff was hospitalized for alcohol abuse in March 2010.  (*See* Tr. at 446-72 (Ex. 17F).)  The Court finds no evidence to support that conclusion.  The March 2010 hospitalization appears entirely consistent with Dr. Jordan's statement that Plaintiff's drug and alcohol use is not material to her disability.

The ALJ has stated no adequate reason for not properly considering and weighing the psychological opinions stated in Exhibit 13F.  But even if the ALJ procedurally erred by not more fully considering and weighing those opinions, reversal and remand is only required when the error affects the substantial rights of the plaintiff.  *See Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012).  Absent an error that affects the substantial rights of a party, administrative proceedings do not require "procedural perfection."  *Id.*  Procedural errors affect the substantial rights of a claimant only when they "cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).  Remand is required only when there is a realistic possibility that the ALJ would have reached a different conclusion absent the procedural error.  *January v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010) (per curiam).  In other words, the Court may find the procedural error of the ALJ harmless.

The harmless error analysis includes the Magistrate Judge's third stated reason for finding that the ALJ properly rejected the opinions of Dr. Jordan – inconsistency between the opinions and the record as a whole.  The Magistrate Judge specifically found the opinions inconsistent with find-ings of a consultative examiner, Kelly R. Goodness, Ph.D.  (*See* FCR at 23-24.)  Dr. Goodness evalu-ated Plaintiff on March 11, 2009.  (Tr. at 325.)  At that time, Plaintiff denied any current use of alco-hol or illegal drugs, but did report two arrests for DUI since July 2008.  (Tr. at 327.)  The evaluation

14

by Dr. Goodness appears to have occurred while Plaintiff was not using drugs or alcohol.

While Plaintiff's "thought processes were logical, relevant, and goal-directed;" she "was oriented to time, person, place, and situation;" and her memory was satisfactory, the evaluation also showed that she "appeared to have been in a state of deterioration since the onset of her symptoms;"she had difficulty focusing and staying on task; she reported auditory hallucinations and paranoid delusions; and her "affect was generally constricted." (Tr. at 326-28.)  In addition, her "attention and concentration were generally moderately impaired" and her "judgment for everyday matters appeared impaired." (Tr. at 328.)  She would respond inappropriately when asked about common problems. (*Id.*)  Furthermore, when her depression was most severe, she would  not leave her apartment and would not eat for several days. (Tr. at 326.)  At the evaluation, Plaintiff did "not appear able to maintain a level of concentration necessary to complete tasks designated by others or by herself." (*Id.*)  And her prognosis was "poor due to the chronic nature of her symptoms" – her problems were "unlikely to be corrected without continued intervention." (Tr. at 329.)  Her GAF score was 45. (Tr. at 329.)  Although Dr. Goodness noted some aspects of Plaintiff's mental status that may suggest an ability to perform substantial gainful activity, the overall picture is of a person unable to maintain employment due to mental impairments.  This overall picture is more consistent with the opinions of Dr. Jordan than different.

While the opinions of Dr. Jordan and Dr. Goodness are not identical, the findings of Dr. Goodness appear mostly consistent with the functional limitations stated by Dr. Jordan.  Moreover, Dr. Goodness stated no opinion as to the functional limitations of Plaintiff.  As in *Newton*, "[t]his is not a case where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another."  *See* 209 F.3d 448, 458 (5th

Cir. 2000).  Nor is this "a case where the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *See id.*  The ALJ did not reject the functional limitations found by Dr. Jordan due to any inconsistency with opinions of Dr. Goodness or any other psychological or medical opinion.  This is a case where Dr. Jordan assessed Plaintiff's functional limitations without regard to her drug and alcohol use, expressly stated that Plaintiff is disabled, and stated that drug and alcohol use is immaterial to her disability determination.  And no other medical or psychological opinion is to the contrary.

In addition, Dr. Jordan's assessment of functional limitations is also supported by an assessment by George R. Mount, Ph.D., a consultative psychologist who evaluated Plaintiff on December 21, 2009.  The Magistrate Judge found that the ALJ had good cause to reject his assessment because Plaintiff's symptoms "during that time period were reasonably attributed to alcohol abuse."  (FCR at 25 (citing R. at 19-21, 421).)  The Magistrate Judge noted that Dr. Mount had evaluated Plaintiff the same month that she was arrested for DWI.  (*See id.* (citing R. at 41, 420-24).)  Although Dr. Mount indeed evaluated Plaintiff in December 2009, (*see* Tr. at 420-24), the record does not support finding that she was arrested for DWI that month.  In fact, according to the testimony relied upon by the Magistrate Judge, (1) Plaintiff was last incarcerated in December 2009, (2) that incarceration resulted from a DWI, and (3) the incarceration lasted three months.  (*See* Tr. at 41.)  Not only does Plaintiff not state when she was arrested, but it appears most likely that Plaintiff was incarcerated for three months ending in December 2009.  In that case, the DWI arrest would have been prior to December 2009.  This scenario is further supported by Plaintiff's later testimony that she does not remember when she was arrested for DWI because she originally received probation for the offense

16

only to violate the terms of her probation resulting in her ultimate incarceration.  (*See* Tr. at 42.)

The Court finds no reasonable basis for attributing Dr. Mount's assessment to Plaintiff's use or abuse of alcohol.  And nothing indicates that the ALJ discounted Dr. Mount's opinions on that or any other basis.  The ALJ noted Dr. Mount's evaluation but stated no reason for disregarding any of it.  (*See* Tr. at 16-17.)  Dr. Mount, moreover, specifically stated that Plaintiff "does not currently drink alcohol or use any other drugs but acknowledges some use and abuse in the past."  (Tr. at 420.) Although he identified sixteen positive clinical findings to support his diagnoses of schizoaffective disorder, depression, post-traumatic stress disorder ("PTSD"), and personality disorder, he neither identifies "substance dependence" as a positive clinical finding nor lists any substance abuse disorder as a possible diagnosis.  (*See* Tr. at 433-34.)  An Interpretive Report for testing conducted by Dr. Mount likewise does not list any substance abuse disorder as a possible diagnosis.  (*See* Tr. at 424.) But that report does note a possibility that Plaintiff may use drugs and alcohol to combat her mental disabilities.  (*See* Tr. at 428.)  In its treatment guide, the report further notes "the possibility of a troublesome alcohol and/or substance-abuse disorder" that if verified should be treated with therapy. (Tr. at 431.)  The report also recognizes that Plaintiff's personality disorders "reflect long-term or chronic traits that are likely to have persisted for several years prior to the present assessment" and that her other mental disorders "tend to be relatively transient, waxing and waning in their prominence and intensity depending on the presence of environmental stress."  (Tr. at 430.)

Dr. Mount completed a PPIQ to set out his (1) diagnoses (listed above); (2) multiaxial evaluation, including a GAF of 40; and (3) prognosis (guarded).  (Tr. at 433.)  Within the PPIQ, he also identified clinical findings that demonstrate or support his diagnoses.  (Tr. at 434.)  He listed Plaintiff's primary symptoms – depression and PTSD – and indicated that they were equally frequent

17

and severe with psychotic features.  (Tr. at 435.)  He recorded his conclusions and assessed Plaintiff's capacity to sustain various mental activities "over a normal workday and workweek, on an ongoing basis in a competitive work environment."[15]  (Tr. at 435-38.)  He found that Plaintiff's psychiatric condition did not exacerbate her physical symptoms.  (Tr. at 439.)  He found that Plaintiff was unable to tolerate even "low stress" at work and that her impairments were likely to produce good and bad days.  (*Id.*)  He estimated that Plaintiff would miss more than three days of work each month due to her mental impairments or treatment.  (Tr. at 440.)  Finally, he found that Plaintiff was able to manage benefits in her best interest.  (*Id.*)  The findings and opinions of Dr. Mount are quite similar to and support those of Dr. Jordan.

The opinions of Dr. Jordan are further supported by medical opinions of Art Smith, M.D. On August 22, 2008, Dr. Smith found Plaintiff permanently disabled due to a bipolar disorder and severe depression without psychosis.  (Tr. at 221, 495.)  He noted an August 7, 2008 diagnosis of polysubstance dependence.  (Tr. at 220.)  He also noted an August 8, 2008 drug screening that was positive for benzodiazepines and Plaintiff verified that she had taken Valium prior to that admission.[16]  (*Id.*)  Plaintiff told him that she had been off Methadone for six months and denied any

---

[15]Dr. Mount found Plaintiff's abilities markedly limited in eleven of twenty listed mental activities: (3) understanding and remembering detailed instructions; (5) carrying out detailed instructions; (6) maintaining attention and concentration for extended periods; (7) performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerance; (8) sustaining ordinary routine without supervision; (9) working in coordination with or proximity to others without being distracted by them; (11) completing a normal workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; (12) interacting appropriately with the general public; (14) accepting instructions and responding appropriately to criticism from supervisors; (15) getting along with co-workers or peers without distracting them or exhibiting behavioral extremes; and (17) responding appropriately to changes in the work setting. (Tr. at 436-38.)  He found her moderately to markedly limited in her abilities (19) "to travel to unfamiliar places or use public transportation" and (20) "to set realistic goals or make plans independently."  (Tr. at 438.)  He found her moderately limited in other listed abilities.  (Tr. at 436-38.)

[16]Plaintiff had been prescribed Valium on July 21, 2008.  (Tr. at 286.)  In August 2008, she reported drinking two beers three days in a row with two Valium.  (Tr. at 214.)

recent substance abuse.  (*Id.*)  Dr. Smith made no other notation regarding alcohol use, abuse, or consumption.  (*See id.*)  Seven months later on March 31, 2009, Dr. Smith stated that Plaintiff "is unable to meet the demands of or cope with the stresse[s] of the workplace."  (Tr. at 493.)  He noted that he had treated her since October 2005 and that he was treating her for bipolar, anxiety, and borderline personality disorders and a history of polysubstance dependence.  (*Id.*)  Her psychiatric symptoms included "severe depression with suicidal ideation and lack of energy/motivation, severe irritable mood swings with potential for violence to others and racing thoughts with inability to concentrate."  (*Id.*)  Her psychotic symptoms included "severe paranoia and auditory hallucinations, profound anxiety and general emotional lability."  (*Id.*)  He opined that her "psychiatric condition is permanent and requires ongoing treatment."  (*Id.*)  Although he noted Plaintiff's history of poly-substance dependence, he did not rely on that history to find her unable to work.  (*See id.*)  To the extent these disability opinions are based on Plaintiff's functioning without use of alcohol or drugs, they are consistent with the opinions of Drs. Mount and Jordan.  And they do not detract from those opinions even if based on Plaintiff's functioning with the use of drugs or alcohol.

Under a de novo review of the administrative record, the Court finds that the ALJ improperly considered and weighed the opinions of Plaintiff's treating psychologist.  Contrary to the finding of the Magistrate Judge, Dr. Jordan's opinions appear consistent with the record as a whole.  The ALJ failed to perform the detailed analysis required by 20 C.F.R. §§ 404.1527 and 416.927.  Had he con-ducted that analysis and properly considered and weighed the opinions of Dr. Jordan there is more than a realistic possibility that he would have reached a different conclusion regarding the materiality of Plaintiff's drug and alcohol use to the disability determination.  Not only does this procedural error cast doubt on the existence of substantial evidence to support the decision to deny benefits, the

19

Court finds no substantial evidence to support the materiality determination of the ALJ, as discussed more in the next section.  Consequently, Plaintiff's substantial rights have been affected by the consideration and weight accorded to the opinions of Dr. Jordan by the ALJ.  This procedural error is not harmless.

### C.    Substance Abuse Revisited

Having found that the ALJ improperly considered and weighed the opinions of Dr. Jordan, the Court returns to the issue of whether Plaintiff's substance abuse was material to the ALJ's disability determination.  Through those opinions, Plaintiff introduced evidence that supports a finding that she would remain disabled even if she stopped using drugs and alcohol.  The opinions are consistent with the psychological and medical opinions of Dr. Mount and Dr. Smith.  And the ALJ has provided no legitimate basis to disregard the opinions of Dr. Jordan.  Upon considering the record as a whole, including the opinions of Dr. Jordan, Plaintiff has carried her burden to show that her drug or alcohol addiction is not a contributing factor material to her disability.  The Court finds no substantial evidence to support the ALJ's determination regarding the effect of Plaintiff's substance abuse.  An "ALJ's materiality determination cannot be said to be supported by substantial evidence" when it is not based on concrete medical evidence.  *McNeal v. Colvin*, No. 3:11-CV-02612-BH, 2013 WL 1285472, at *30 (N.D. Tex. Mar. 28, 2013).  In this case, the Court finds no evidence that drug or alcohol use were material to Plaintiff's disabling mental impairments or to the ALJ's disability determination.

Although the administrative record certainly contains evidence of alcohol and drug use, nothing of record shows such use material to her bipolar and anxiety impairments or disability therefrom.  In addition to alcohol and drug use already mentioned, the record shows other intermittent use in

2008 and 2009.  On May 23, 2008, Plaintiff was taken to Wise Regional Health System for a blood draw, because she had been "weaving on the road."  (Tr. at 294.)  She used Methadone that day. (*See* Tr. at 298.)  An August 7, 2008 medical record of JSA Health indicates that Plaintiff had a DWI that resulted in six days in jail.  (Tr. at 212.)  That same month, Helen Farabee Regional MHMR ("MHMR") reported moderate co-occurring substance abuse with a GAF score of 30.  (Tr. at 414.) On August 13, 2008, MHMR referred Plaintiff for substance abuse following a statement that she would "intentionally overdose on black heroin" upon her release. (Tr. at 321.)  A Psychiatric Review Technique dated December 10, 2008, noted a history of polysubstance dependence, but noted no current drug or alcohol use other than prescribed medication.  (Tr. at 230, 234.)  A December 15, 2008 drug screening at Wise Regional Health System was negative for drugs and alcohol.  (Tr. at 309.)  On December 18, 2008, Greg Garrett, M.D., noted Plaintiff's prior history with drugs and alcohol, but recorded that she had stopped drinking and using drugs.  (Tr. at 262.)

On January 15, 2009, MHMR diagnosed polysubstance dependency along with a bipolar disorder.  (Tr. at 396.)  But it noted no use of drugs or alcohol for the past month, and chose not to treat any drug or alcohol problem with Methadone.  (Tr. at 403.)  According to its assessment dated that same date, Plaintiff had only recently been released from Tarrant County Jail where she had been held for three months for "unpaid tickets" following five months incarceration in Wise County Jail for unpaid tickets.  (Tr. at 400.)  The next week MHMR reviewed Plaintiff's bipolar disorder with recent depression and polysubstance abuse, set out symptoms and side effects of her major depressive and bipolar disorders, and noted generally "Some Progress."  (Tr. at 313.)  In addition to reporting no co-occurring substance abuse in January with a GAF score of 60, it also reported no such abuse in May and July 2009, with GAF scores of 38 each month.  (Tr. at 377, 385, 394.)  However,

it reported low co-occurring substance abuse on March 12, 2009, with a GAF score of 60.  (Tr. at 389.)  That same day, it developed a three-month plan for Plaintiff to quit drugs and alcohol, including reaching Plaintiff's objective to "stay sober for at least 1 year."  (Tr. at 489.)  The day before, Plaintiff reported to Dr. Goodness that she had been arrested twice since July 2008 for driving under the influence, and that "she chose to complete her probation for both charges by spending three months in jail for each charge."  (Tr. at 327.)

Furthermore, Mark Schade, Ph.D., a consultative psychiatrist, diagnosed no substance abuse disorder when he assessed Plaintiff's mental status for the period April 1, 2008, to April 8, 2009.  (Tr. at 331-43.)  When considered with the psychiatric records of Dr. Jordan, Dr. Mount, Dr. Smith, and Dr. Goodness and the other evidence of record, the intermittent drug and/or alcohol use in 2008 and 2009 is insufficient to support a finding of materiality.  The administrative record as a whole simply provides no substantial evidence to support the ALJ's materiality finding.  Consequently, the Court finds that the ALJ erred in finding Plaintiff's substance abuse material to her disability.

The CAAA, as codified in 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J), does not require claimants to stop drug or alcohol use to be entitled to benefits.  It merely requires that they be disabled in the absence of such use.  That Plaintiff continued to use drugs and alcohol as she tried to receive SSI and DIB is insufficient reason of itself to find her non-disabled.  Complete abstention from drug and alcohol use is not required for the claimant to carry her burden to show that she would remain disabled after stopping their use.  Here, Plaintiff has provided a definitive psychological statement that she is disabled and that her drug and alcohol use are immaterial to that disability determination.  Despite Plaintiff's intermittent drug or alcohol use in 2008 and 2009, Dr. Jordan and Dr. Mount appear to evaluate her functional limitations without considering drug or alcohol use or abuse.

While matters of disability are ultimate issues for the ALJ to decide, an ALJ cannot simply dismiss or ignore a medical or psychological opinion from the claimant's treating psychologist – there must be substantial evidence in the record to support disregarding it.  And in this instance the ALJ erred in disregarding the psychological limitations of Plaintiff as found by Dr. Jordan.

Given the prejudicial failure to properly consider the opinions of Plaintiff's treating psychologist, it is proper to remand this case to the Commissioner for further proceedings.  *See McNeal v. Colvin*, No. 3:11-CV-02612-BH, 2013 WL 1285472, at *31 (N.D. Tex. Mar. 28, 2013).  Accordingly, the Court hereby remands this action for further proceedings consistent with this order.  There is no need to consider the other objections to the FCR.

### III.    Conclusion

Having conducted a de novo review and determination as to issues to which Plaintiff has specifically objected in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(3), the Court hereby rejects the Findings, Conclusions, and Recommendation of the Magistrate Judge.  It instead **DENIES** Defendant's Motion for Summary Judgment (doc. 11), and on Plaintiff's Brief (doc. 9) and Plaintiff's Objections to the Magistrate Judge's Report and Recommendation (doc. 14), **REVERSES** the Commissioner's decision to deny Supplemental Security Income and Disability Insurance Benefits to Plaintiff Kimberli Snodgrass.  For the reasons stated herein, the Court **REMANDS** this action for further proceedings consistent with this order.

SO ORDERED this 13th day of August, 2013.

JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE

23